IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Leon Cheatham, )
    Plaintiff, )
)
v. ) 1:13cv320 (CMH/TRJ)
)
William Muse, et al., )
    Defendants. )

## MEMORANDUM OPINION

Leon Cheatham, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his Due Process and Equal Protection rights by denying him discretionary parole. Plaintiff names as defendants William Muse, Chairman of the Virginia Parole Board; and Harold Clarke, Director of the Virginia Department of Corrections. On May 9, 2014, defendants filed a Motion for Summary Judgment, accompanied by a supporting memorandum and the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. 50-52. Plaintiff filed an objection and response. Dkt. 59-60. Defendants then filed a Supplemental Motion for Summary Judgment on June 19, 2014, after discovering a mistake of fact in their previous motion. Dkt. 61. Plaintiff filed a response, as well as his own Motion for Summary Judgment. Dkt. 64, 65. For the reasons that follow, defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment must be granted, and plaintiff's Motion for Summary Judgment must be denied.

### I. Background

On May 20, 1986, plaintiff pled guilty in the Circuit Court for the City of Norfolk to five counts of robbery, five counts of use of a firearm in the commission of a felony, and one count of malicious wounding. Plaintiff was sentenced to 58 years in prison. Compl. ¶ 7. Plaintiff's

co-defendant, Mark Morgan, received a sentence of 30 years for the same offenses. Id.

On August 20, 1986, the Virginia Department of Corrections ("VDOC") Court and Legal Services Unit determined that plaintiff was ineligible for discretionary parole, pursuant to Virginia Code § 53.1-151(B)(1). Id. ¶ 8; Defendants' Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") [Dkt. 51], Ex. 1 (Muse Aff.) ¶¶ 4-5. Pursuant to this statute, an inmate convicted of three separate counts of murder, rape, or robbery with the use of a firearm is ineligible for discretionary parole if the offenses "were not part of a common act, transaction or scheme." Va. Code § 53.1-151(B)(1). VDOC's Court and Legal Services Unit determined that, based on plaintiff's offenses committed on or after July 1, 1982, he was ineligible for discretionary parole. Def.'s Mem., Muse Aff. ¶ 5. Plaintiff appealed this decision to the Virginia Parole Board, as provided by Virginia Code § 53.1-151(B)(1). The Virginia Parole Board upheld VDOC's determination on May 31, 2001. See id. ¶ 6; Ex. B.[1]

Morgan, plaintiff's co-defendant, had also been deemed ineligible for discretionary parole. See, e.g., Compl. ¶ 10. However, he was "mistakenly considered" for discretionary parole in 1993, and was released from VDOC custody on August 12, 1993. Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment ("Def.'s Supp. Mem.") [Dkt. 62], Ex. 1 (Muse Aff.) ¶ 4. On October 21, 1997, Morgan began a 130-month sentence at a federal prison in Georgia. After a Virginia detainer was lodged against him, he returned to Virginia on February 22, 2007, where his parole was then revoked. Morgan has been incarcerated in VDOC custody since February 22, 2007. Id. ¶ 5.

On November 28, 2011, plaintiff filed another appeal of his own parole status after learning about Morgan's release. Compl. ¶ 11. Defendant Muse denied plaintiff's appeal on

---

[1] Defendant Muse was not the Chairman of the Virginia Parole Board at the time of plaintiff's appeal.

2

November 15, 2012, upholding the Virginia Parole Board's 2001 determination that plaintiff was ineligible for discretionary parole. Id. Plaintiff filed this action on February 19, 2013, alleging that the defendants violated his Due Process rights and Equal Protection rights. Specifically, plaintiff argues that the defendants failed to properly follow the provisions of Virginia Code § 53.1-151(B)(1). See Compl. ¶ 12. He argues that the offenses for which he was sentenced were part of a common scheme or plan, and that he should, therefore, have been eligible for discretionary parole. See Def.'s Mem., Ex. 1, Encl. B. In addition, he argues that he was treated differently than Morgan, even though the two men were similarly situated. Compl. ¶ 12.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party

bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

As stated above, the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath . . . is not enough to defeat a motion for summary judgment. [The plaintiff] has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.D.C. 1994).

### III. Analysis

A. Defendant Harold Clarke

As an initial matter, defendant Clarke must be dismissed from this action. It is clear from the record that Clarke played no personal role in the parole eligibility decisions challenged by plaintiff. Clarke, as Director of VDOC, does not review VDOC's initial determination of an inmate's eligibility for discretionary parole. See Def.'s Mem., Ex. 1 ¶ 4. Clarke also did not play any role in the determination of the outcome of plaintiff's appeal, as he is not a member of the

Virginia Parole Board. See, e.g., id. at 4. Thus, Clarke did not have any influence over plaintiff's initial classification as ineligible for discretionary parole. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, unless proceeding on a theory of supervisory liability, a plaintiff must allege facts sufficient to show that a defendant personally committed acts that deprived him of his constitutional rights. See, e.g., Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotations omitted). As the record shows that Clarke did not play any role in the decision challenged by plaintiff, Clarke must be dismissed as a defendant.[2]

B. Defendant William Muse

It is also unclear whether defendant Muse played a significant enough personal role in the challenged decisions to be held liable under § 1983. Plaintiff does not allege, nor could he, that Muse played any role in the decision to deny him discretionary parole in 1986. This decision was made entirely by VDOC's Court and Legal Services Unit, without any input from the Virginia Parole Board. See, e.g., Defs.' Mem., Muse Aff. ¶¶ 4, 6. The Virginia Parole Board's first involvement in plaintiff's case came in 2001, when the Board denied plaintiff's appeal of VDOC's decision. Id. ¶ 6. Muse was not the Chairman at the time of this denial. Id. Enc. B. It is unclear whether Muse was a member of the Virginia Parole Board at this time. Even if he had been a member, however, there is no indication that Muse personally denied

---

[2] Plaintiff agrees that Clarke may not be liable to him as a defendant. See Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp.") [Dkt. 60], at 2 ("Response to Fifth Defense") ("[Plainitff] avers and says that defendant Harold [Clarke] may not be responsible for his injuries or damages . . . and would conceed to haveing [sic] him . . . removed as a defendant if the court be so inclined.").

5

plaintiff's appeal or <u>personally</u> upheld VDOC's decision. Muse's only documented personal involvement in plaintiff's case occurred when Muse denied plaintiff's appeal on November 15, 2012. <u>See, e.g.</u>, Compl. ¶ 11. Muse's decision to deny plaintiff's appeal, taken in his supervisory authority, is likely not enough to render him liable under § 1983. <u>See Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985) (finding that defendant was not sufficiently personally involved in an allegedly unconstitutional adjustment team hearing when he received a letter from plaintiff about the hearing, but was not actually present at the hearing itself); <u>see also Alder v. Corr. Med. Servs.</u>, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension.").

Even if Muse could be found sufficiently personally involved to render him liable under § 1983, however, he is entitled to absolute quasi-judicial immunity. In general, "absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer." <u>Tobin for Governor v. Illinois State Bd. of Elections</u>, 268 F.3d 517, 521 (7th Cir. 2001) (citing <u>Butz v. Economou</u>, 438 U.S. 478, 512-13 (1978)). Judicial officers, such as judges, are entitled to absolute immunity when they engage in "judicial acts," <u>Pierson v. Ray</u>, 386 U.S. 547, 553-54 (1976), even if the actions are undertaken maliciously or in excess of their authority, <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978) (citing <u>Bradley v. Fisher</u>, 13 Wall. 335, 351 (1972)). This immunity ensures that "judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Bradley</u>, 13 Wall. at 350 n.16. When judges perform judicial acts, they are, by default, exercising a discretionary function. Absolute immunity ensures that they can perform this function efficiently and without fear of the potential consequences of their actions. <u>See McCray v. Maryland</u>, 456 F.2d 1, 3 (4th Cir. 1972), <u>overruled on other grounds by Pink v.</u>

6

Lester, 52 F.3d 73 (4th Cir. 1995).

Similarly, administrative officials performing similar discretionary acts as members of quasi-judicial bodies are entitled to absolute immunity to protect them from the threat of harassment or intimidation, and to ensure that their decisions are not unduly influenced by political concerns. See id.; Capra v. Cook County Bd. of Review, 733 F.3d 705, 709-10 (7th Cir. 2013) (citing Tobin for Governor, 268 F.3d at 517). "Like judges, [these individuals] require the insulation of absolute immunity to assure the courageous exercise their discretionary duties." McCray, 456 F.2d at 3. In Stump, the U.S. Supreme Court reaffirmed that judicial immunity is most important in "controversies involving not merely great pecuniary interests, but the liberty and character of the parties . . . ." Stump, 349 U.S. at 364 (quoting Bradley, 13 Wall. at 348). Because the Virginia Parole Board exercises a such an important discretionary function – namely, interpreting the Virginia Code and applying the law to the specific set of facts presented by each individual inmate, whose liberty is clearly at stake – the Fourth Circuit has held that members of the Virginia Parole Board are absolutely immune from suit under § 1983. See Bowman v. Knott, 267 F. App'x 214, 214 (4th Cir. 2008) (holding that the Chairman of the Virginia Parole Board was entitled to absolute judicial immunity); Franklin v. Shields, 569 F.2d 784, 798 (4th Cir. 1977); Pope v. Chew, 521 F.2d 400, 405 (4th Cir. 1975).

Because the decision to deny plaintiff's 2011 appeal of his parole classification was undertaken by Muse in his capacity as an administrative officer of the Virginia Parole Board, and involved the exercise of discretion, Muse is entitled to absolute immunity for this decision.

### IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment will be granted, and plaintiff's Motion for Summary Judgment

will be denied. An appropriate Judgment and Order shall issue.

Entered this \_\_11th\_\_ day of \_\_February\_\_ 2015.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia